110 N.J. Super. 330 (1970)
265 A.2d 550
IN THE MATTER OF THE COMPLAINT OF THE TOWNSHIP OF MILLBURN, IN THE COUNTY OF ESSEX, STATE OF NEW JERSEY, AGAINST THE ESSEX COUNTY EQUALIZATION TABLE FOR THE YEAR 1969.
TOWNSHIP OF MILLBURN, IN THE COUNTY OF ESSEX, PLAINTIFF-APPELLANT,
v.
ESSEX COUNTY BOARD OF TAXATION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued April 27, 1970.
Decided May 15, 1970.
*332 Before Judges KILKENNY, LABRECQUE and LEONARD.
Mr. Harold M. Kain argued the cause for appellant Township of Millburn.
Mr. Herbert K. Glickman, Deputy Attorney General, argued the cause for respondent Essex County Board of Taxation (Mr. George F. Kugler, Jr., Attorney General of New Jersey, attorney; Mr. Stephen Skillman, Assistant Attorney General, of counsel).
The opinion of the court was delivered by LABRECQUE, J.A.D.
The Township of Millburn appeals from the affirmance by the Division of Tax Appeals (the Division) of the equalization table adopted by the Essex County Board of Taxation (county board) for the year 1969.
Millburn underwent a revaluation during the year 1968. Its tax list for 1969 reflected the revalued assessments and resulted in an aggregate of assessed real estate which substantially exceeded that for the prior year. The Director of the Division of Taxation had prepared a suggested formula for use by the assessors of revalued districts in arriving at *333 the ratio of assessments to true value. This formula, which is designed to establish a new ratio of assessments to true value for the year following revaluation through a comparison with the aggregate for the prior year, may be summarized as follows:
The value of the ratables on the Added and Omitted Assessment List and the value of all additional ratables, such as new construction and improvements and property transferred from exempt to taxable, are added to the total of the ratables for the district as shown by Director's table for school aid for the preceding year under N.J.S.A. 54:1-35.1. Then the value of all ratables lost by fire, demolition and transfers from taxable to exempt is deducted. The resulting total, designated as "Net true value at beginning of the new year" is then divided into the aggregate of assessments produced by the revaluation and the resulting figure is the ratio of assessments compared to true value produced by the revaluation. (Emphasis added)
In calculating its ratio under the formula Millburn deducted not only the ratables lost by fire, demolition and transfers from taxable to exempt status, as authorized by the Director, but also the sum of $2,564,100 representing claimed reductions in ratables for the prior year as a result of judgments on contested appeals from assessments. The county board declined to accept Millburn's computation and, applying the Director's formula, fixed its ratio at 104.24%. Had the county board permitted Millburn to deduct the additional sum claimed, its ratio would have been 105.20%. If Millburn's contention had been upheld, its practical effect would have been to bring about a reduction in Millburn's equalized valuations and a consequent decrease in its share of the cost of county government.
The county board's annual preparation of the county equalization table, pursuant to N.J.S.A. 54:3-17, is to be distinguished from the preparation of the Table of Equalized Valuations which the Director of the Division of Taxation is required to promulgate on October 1 of each year for purposes of state school aid, N.J.S.A. 54:1-35.1. The county board's table is for the purpose of apportioning the burden of the cost of county government among the *334 various taxing districts in the county. Thus, any reduction in the share of one taxing district must be made up by the remaining districts. In the case of the school aid table, however, any reduction or increase in the amount payable to a school district in the form of school aid does not affect the amount payable to other districts. In practice many county boards follow the Director's table as accurately reflecting the equalization ratios for the following year.
The function of the Division of Tax Appeals upon a showing of error by the county board in its preparation of the equalization table is the same as that charged to the county board in the first instance, i.e., to call a hearing of the taxing districts of the county and promulgate a new table. Passaic v. Passaic County Bd. of Taxation, 18 N.J. 371, 393 (1955); New Brunswick v. Middlesex County Equalization Table, 25 N.J. Misc. 353, 53 A.2d 641 (Div. Tax App. 1947). Millburn contends that the refusal to permit it to deduct the loss in assessments due to reductions granted as a result of tax appeals during 1968 was error which required the county board to promulgate a new table. We are thus confronted with a single question  whether it was error for the county board to follow the Director's formula.
In addition to Millburn, three other taxing districts had undergone revaluations for 1968 so that, at least, they too, would have been entitled to the benefit of the claim now made by Millburn. They have not appealed.
It is to be noted that the ratio arrived at by the county board is applicable for 1969 only. The formula is used only to fix the ratio for the year following a revaluation. Thereafter, the ratio is arrived at from sales ratio studies made on a continuous basis under supervision of the Local Property Tax Bureau of the Division of Taxation.
In preparing the equalization table the county board is required to determine according to its best knowledge and information the general ratio or percentage of the full value at which the real property in each taxing district *335 is, in fact, assessed, according to the tax lists submitted to it by the assessors, and to equalize the aggregates at full value in order equitably to distribute the county tax burden among them. N.J.S.A. 54:3-17 and 18. The purpose of the equalization process has been said to be "to minimize so far as possible the unfair distribution of the county tax which is one result of varying average assessment ratios among municipalities within the same county." Passaic v. Passaic County Bd. of Taxation, supra, at 381. No specific plan or method for reaching that determination is prescribed, and any efficient mode may be adopted. Carteret v. Division of Tax Appeals, etc., 40 N.J. Super. 439, 446 (App. Div. 1956), certif. den. sub nom. Sayreville v. Division of Tax Appeals, 22 N.J. 224 (1956). The board's conclusions need not rest upon proof admissible under common law rules of evidence, and an oversensitive regard for such rules is inconsistent with the practical and just discharge of its duty in this respect. Carteret v. Division of Tax Appeals, etc., supra, at 446. After the Division has reviewed and affirmed the county board's table its action is presumed to be correct and the courts will not interfere in the absence of an affirmative showing that the Division's action was arbitrary, capricious or unreasonable. Id. at 448.
The page 8 formula here used is an accepted method of arriving at equalization ratios. While we are inclined to agree with the judge of the Division that there may be merit to Millburn's argument that loss of ratables due to judicial reductions in assessments is as much a loss to the taxing base as one caused by fire, demolition, or change in taxable status, we cannot say that adherence to the Director's formula by the county board was error. Computation of the ratio following a revaluation is accompanied by many imponderables and any reasonable method of accomplishing equalization may be utilized. Woodbridge v. Middlesex Cty. Bd. of Taxation, 96 N.J. Super. 532, 536-37 (App. Div. 1967). The equalization process has been said to be an inexact science, and since individual assessments are not *336 affected by the table, a degree of imperfection may be tolerated.
While the county board was not bound to follow the Director's formula, it was free to do so. Its refusal to further refine the formula was not unreasonable. Each taxing district may be confronted at the end of the year with a loss in ratables due to reductions in assessments granted by the county board and the Division.[1] The reductions are not always for the current year but, in many instances may cover several years. In many cases a reduction by the county board in one year may be further reduced  or restored  by the Division during the following year. The county board must begin equalization proceedings on January 25 and complete them by March 10 of each year. It would appear clear that an examination of all reductions in assessments claimed by a revalued taxing district as a deduction under the Director's formula would greatly handicap the board in the timely fulfillment of its duties.
We accordingly hold that the use of the Director's formula was not error.
The judgment of the Division of Tax Appeals is accordingly affirmed.
NOTES
[1] In annually apportioning the county tax burden among the taxing districts, the county board is required to credit each taxing district with the amount of any overpayment due to reductions in assessments for prior years by final judgments on appeal, complaints and applications. N.J.S.A. 54:4-49. See also Newark v. Essex County Board of Taxation, 110 N.J. Super. 93 (Law Div. 1970).