124 N.J. Super. 570 (1973)
308 A.2d 60
YELLOW CAB CORPORATION OF PASSAIC AND CLIFTON, A NEW JERSEY CORPORATION, PLAINTIFF,
v.
THE CITY COUNCIL OF THE CITY OF PASSAIC, A MUNICIPAL CORPORATION, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided June 26, 1973.
*574 Mr. H. Ronald Levine for plaintiff.
Mr. Joseph F. Scancarella for defendant (Mr. William Schey appearing).
SCHWARTZ, L., J.C.C., Temporarily Assigned.
Plaintiff, a taxicab licensee in the City of Passaic, instituted this action seeking judicial review of the refusal of the local governing body to increase the authorized taxi fare by adopting an ordinance establishing a rate which plaintiff alleges is essential for it to remain in business.
The authority and procedure by which a municipality may engage in rate-making is legislatively uncharted.
When the matter originally came before the court it was remanded to the municipal council because an inadequate record had been made of the initial proceedings before the public body, which resulted in the adoption of an ordinance establishing a flat-rate taxi fare of $1.15 per trip within the city instead of the rate of $1 per trip which previously had prevailed.
*575 At the new hearing plaintiff presented financial data for the purpose of supporting its original request for a flat-rate charge of $1.50 per trip. The governing body adopted a resolution denying the application without expressing any factual or legal basis for its decision.
What authority is delegated to municipal bodies by the Legislature in the sphere of taxicab regulation?
N.J.S.A. 48:16-2 requires the owner of a taxicab to obtain the consent of the governing body before operating his vehicle along any street in a municipality and also makes provision with respect to insurance requirements.
N.J.S.A. 40:52-1 provides:
The governing body may make, amend, repeal and enforce ordinances to license and regulate:
a. All vehicles used for the transportation of passengers, baggage, merchandise, and goods and chattels of every kind, and the owners and drivers of all such vehicles; * * * [Emphasis supplied]
Authority to implement these powers may be found in N.J.S.A. 40:48-2:
Any municipality may make, amend, repeal and enforce such other ordinances, regulations, rules and by-laws not contrary to the laws of this state or of the United States, as it may deem necessary and proper for the good government, order and protection of persons and property, and for the preservation of the public health, safety and welfare of the municipality and its inhabitants, and as may be necessary to carry into effect the powers and duties conferred and imposed by this subtitle, or by any law.
The purpose of the statutes should not be frustrated by an unduly narrow interpretation of the power to "regulate." Authority delegated to an administrative agency should be construed so as to permit the fullest accomplishment of the legislative intent. Cammarata v. Essex County Park Comm'n, 26 N.J. 404, 411 (1958); 42 Am. Jur., Public Administrative Law, §§ 4, 35.
In Kirzenbaum v. Paulus, 51 N.J. Super. 186 (Law Div. 1958), the court, in interpreting N.J.S.A. 40:67-1 *576 which provided for the delegation of the power to "regulate" structures on the streets, permitted the construction of a sidewalk bank depository, saying:
In the opinion of this court the term "regulate" in the cited statute is held to constitute a delegation of power by the Legislature to the municipality to authorize and encumbrance such as is here contemplated if, in the opinion of the municipal body, such authorization is in the public interest, with particular reference to the improvement of traffic conditions, and thereby affecting the safety and welfare of its citizens. [at 195]
To regulate means "to fix, establish or control; to adjust by rule, method or established mode; to direct by rule or restriction; to subject to governing principles or laws * * *." Black's Law Dictionary (3d ed. 1933), 1519; Jamesburg v. Hubbs, 6 N.J. 578, 585 (1951).
The court recognizes the enactment of a taxi fare ordinance as representing a proper exercise by the governing body of its police power to regulate, as it is designed to serve an essential and public interest, even though it interferes with the freedom of contract between contracting parties, the cab company and the passenger. See Inganamort v. Fort Lee Continental Gardens, Inc., 62 N.J. 521, 537 (1973), as to rent control ordinances; N.J.S.A. 33: 1-40 as to municipal regulation of the conduct of businesses licensed to sell alcoholic beverages.
The constitution provides no restraint against the delegation to an administrative agency of a considerable measure of discretionary authority to administer a statute enacted pursuant to the police power of the State, provided the statute establishes a sufficient basic standard and a definite and certain rule of action for the guidance of such agency. Public Service Coordinated Transport v. State, 5 N.J. 196 (1950).
Plaintiff has not raised the issue whether, by the delegation of the power to "regulate," the power of the governing body to fix prices or rates is implied, and the court *577 will not express an opinion thereon. However, in other areas, the grant of police powers by the Legislature in N.J.S.A. 40:48-2, without requiring stated standards, has been sustained, i.e., Bd. of Health, Weehawken Tp. v. N.Y. Central R. Co., 4 N.J. 293, 300-301 (1950); Fred v. Mayor, etc., Old Tappan Borough, 10 N.J. 515 (1952). Trial courts will be obliged to adhere to the "expansive view" of home rule as related to the implied and incidental powers invested in local government by N.J. Const. (1947) Art. IV, § VII, par. 11, following Inganamort v. Fort Lee Continental Gardens, Inc., supra, 62 N.J. at 533.
Plaintiff challenges not only the decision of the council but also the manner in which its petition for relief was heard and resolved.
The method of providing due process under law for specific state agencies has been prescribed in statutes dealing with the Public Utilities Commission (N.J.S.A. 48:2-1), with the Milk Control Board (N.J.S.A. 4:12A-9), and with many other state agencies which are given rule-making powers, i.e., Board of Optometry (N.J.S.A. 45:12-4), and N.J.S.A. 26:2C-8 conferring power of air pollution control on the State Department of Health.
Upon the adoption of the Administrative Procedure Act (N.J.S.A. 52:14B), effective September 1, 1969, all of the departments and agencies of the Executive Branch of the State Government and other specified state agencies became subject to the rule-making and procedural requirements of the act and to the New Jersey Administrative Code to be promulgated by the Division of Administrative Procedure of the Department of State.
However, with limited exceptions, i.e., N.J.S.A. 40:60-51.2, requiring a "public hearing" to release a restriction in a deed delivered by a governing body, N.J.S.A. 40:47-6, outlining disciplinary hearing for police, and other specific statutes, the Legislature has not provided any administrative procedure for the guidance of municipal agencies as Congress has provided under the Federal Administrative Procedure Act *578 for federal agencies, and as has been provided for state agencies by N.J.S.A. 52:14B.
Because of the paucity of decisional law respecting the "due process" applicable to the area of local legislative powers as distinguished from quasi-judicial power, it is necessary to review the nature of the administrative authority which occupies the gamut between these two poles.
At one end of the spectrum of municipal regulation is the concept of quasi-judicial power, such as resides in boards of adjustment, planning boards and governing bodies in zoning and planning matters, short of adoption of municipal ordinances. Applicants in this area are entitled to a judicial trial type of hearing, including notice, examination and cross-examination of witnesses, and an administrative determination grounded on competent and credible proofs and represented by appropriate findings based thereon. Tomko v. Vissers, 21 N.J. 226, 238-241 (1956).
At the other end of the axis of municipal regulation is the general classification of legislative or quasi-legislative powers. For the purpose of determining the present issue, the ministerial powers and other varying positions of administrative action of a municipal governing body need not be considered.
When an administrative agency acts legislatively, it should conduct its proceedings as does a Legislature. The strictures of judicial procedures are wholly unrelated and unadapted to the promulgation of rules and regulations. [Consolidation Coal Co. v. Kandle, 105 N.J. Super. 104, 113 (App. Div. 1969), aff'd 54 N.J. 11 (1969)].
The elements of fact-finding as required in quasi-judicial proceedings are entirely inappropriate to administrative proceedings of a strict legislative nature, except where the Legislature requires such findings to be made before the agency can act. Cf. In re Plainfield-Union Water Co., 11 N.J. 382, 392, 395 (1953); Abbotts Dairies v. Armstrong, 14 N.J. 319, 331-334 (1954).
*579 * * * If the measures invoked tend to serve a legitimate interest of society, the wisdom of the course taken is not ordinarily a justiciable [sic] question. When the subject lies within the police power of the State, "debatable questions as to reasonableness are not for the courts but for the legislature which is entitled to form its own judgment." [Citation omitted]. The range of the State's discretion in promoting the security and well being of the public "accords with the subject of its exercise." [Citation omitted]. Where the end is one to which legislative power may properly be directed, it is enough "if it can be seen that in any degree, or under any reasonably conceivable circumstances, there is an actual relation between the means and the end." [Citation omitted]. [Abelson's Inc. v. N.J. State Board of Optometrists, 5 N.J. 412, 420 (1950); Consolidation Coal Co. v. Kandle, supra.]
When a statute is silent as to the mode of procedure, a governing body is not required to hold a judicial type of hearing before acting legislatively. Ufheil Const. Co., Inc. v. Oradell, 123 N.J. Super. 268, 273 (App. Div. 1973); In re Port Murray Dairy Co., 6 N.J. Super. 285, 301 (App. Div. 1950).
Yet, while rate-making is labelled a legislative process, the due process clause of the U.S. Constitution provides that no one shall be deprived of his property without due process of law, and the "due process" which must be accorded in the establishment of a rate includes the affording of an opportunity for a hearing. St. Joseph Stock Yards Co. v. United States, 298 U.S. 38, 50, 56 S.Ct. 720, 80 L.Ed. 1033 (1935).
Railroad rates have long been regulated under the interstate commerce power, prices of milk under the police power, and in time of war prices generally have been controlled under the war power. The procedure by which the requirements of due process have been met has varied. In respect to the public regulation of the rates of private concerns in peace-time, which is what we have here, the minimum requirements for a hearing are clearly established. Jordan v. American Eagle Fire Ins. Co., 83 U.S. App. D.C. 192, 169 F.2d 281 (D.C. Cir.1948).
*580 In this instance rate-making combined the elements of policy making and adjudication, being a blend of prescription for the future with the disposition of a particular, immediate petition.
When rates are to be established, frequently adjudicative facts as to a particular present situation are in dispute which would call for a trial-type of hearing, and yet the board may also weigh related considerations involving legislative or executive action.
While fact finding may to some extent be involved in the process, the due process requirements of confrontation and cross-examination, the hallmarks of the judicial inquiry, are not necessarily present. Rather the quasi-legislative inquiry tends to consult broad relevant data available from surveys, studies and published experience, free from the limitations of confrontation and cross-examination. Initially, the quasi-legislative inquiry depends on staff work. [Jones v. District of Columbia, 116 U.S. App. D.C. 301, 323 F.2d 306, 309 (D.C. Cir.1963)]
In the present case no staff work was prepared or presented at the public hearing by the council, nor was any study made of the data organized by the plaintiff in support of its position.
In the leading case of Public Service Coordinated Transport v. State, 5 N.J. 196 (1950), Chief Justice Vanderbilt said (at 214) "It is well recognized that rate making is a legislative and not a judicial function * * *." However, since the Legislature specifically provided in N.J.S.A. 48:2-21(b) that the Board of Public Utility Commissioners may "fix just and reasonable individual rates" the court held that where the reasonableness of the fixed rate is challenged, the court is duty-bound to weigh the evidence adduced at the hearing and resolve for itself the issue of reasonableness.
The court emphasized that
* * * rate making is not an adversary proceeding in which the applying party needs only to present a prima facie case in order to be entitled to relief. There must be proof in the record (of the Commission) not only as to the amount of the various accounts but *581 also sufficient evidence from which the reasonableness of the accounts can be determined, [at 219],
and the applying party has the burden of proof in this regard.
There is no legislative direction, however, as to the procedure to be followed in the fixing of rates by municipal agencies.
In Laba v. Newark Board of Education, 23 N.J. 364, 382 (1957), the Supreme Court, in referring to the broad powers vested in school governing bodies, said: "[a]bsent specific legislative direction, the administrative tribunals may mould their own procedures so long as they operate fairly and conform with due process principles."
This holding is in accordance with the general principles of administrative law. See 2 Am. Jur.2d § 437, at 245; 2 Davis, Administrative Law Treatise, § 11.02, at 41 (1958).
Fair procedure would appear to require the adoption of the rule of reasonableness in furtherance of the broad goal of regulation. Motyka v. McCorkle, 58 N.J. 165, 179 (1971). The fair play, traditional in Anglo-American justice, rejects arbitrary action and insists upon a balancing of the interests of the commuting public which requires protection against threatened consequences of unrestrained practices of the taxi business, and a consideration of the effects of economic maladjustment which may threaten to destroy the taxi industry or diminish the quality of its service and deprive the community of a necessary mode of transportation.
Administrative agencies are always expected to exercise their responsibility upon reasoned judgment. While rate-making power involves a consideration of large questions of public policy and business wisdom, its conclusions must be factually supported, thus blending quasi-judicial with quasi-legislative functions.
In order to make a valid judgment as to the reasonableness of the rate in the present case, the local board was required to look behind the figures shown by the applicant's *582 books and to make comparison with parallel situations, as well as experience in other municipalities. Lacking these tests, the record would lack the evidence upon which a proper fare base could be determined, bearing in mind that the hearing is primarily informational to assist the council to develop a reasonable rate or fare structure. See Nassau County v. Metropolitan Transp. Authority, 57 Misc.2d 1025, 293 N.Y.S.2d 1017, 1021 (Sup. Ct. 1968).
The hearing need not conform strictly with common-law rules of evidence or procedure. Cf. Norwegian Nitrogen Products Co. v. United States, 288 U.S. 294, 53 S.Ct. 350, 77 L.Ed. 796 (1933); United States v. Nugent, 346 U.S. 1, 73 S.Ct. 991, 97 L.Ed. 1417 (1953); In re Port Murray Dairy Co., supra, 6 N.J. Super. at 295. Nevertheless, an essential of the fair hearing contemplated is that the evidence or material upon which the body may rely to support its order be disclosed and made part of the hearing record, with opportunity of refutation afforded to the interested parties. Cf. Krauss v. A. & M. Karagheusian, Inc., 13 N.J. 447 (1953); In re Plainfield-Union Water Co., 11 N.J. 382 (1953); Family Finance Corp. v. Gough, 10 N.J. Super. 13 (App. Div. 1950). The determination must be accompanied by adequate findings which decide the basic facts and embody its conclusions resting thereon. These findings are of the utmost importance, not only in insuring a responsible and just determination by the board, but also in affording a proper basis for effective judicial review. See Household Finance Corp. v. Gaffney, 11 N.J. 576 (1953); Abbotts Dairies v. Armstrong, supra, 14 N.J. at 332.
In re Marion Bus. Transp. Co., 53 N.J. Super. 308 (App. Div. 1958), the court said:
We have been urged to make our own findings upon the record. The field of public utility regulation is a highly complex one. The Legislature has allocated to those highly experienced the obligation and prerogatives of rendering judgment. On the basis of this record it is not appropriate for us to make our own findings of fact. [at 314; citations omitted]
*583 Cf. New Jersey Bell Telephone Co. v. Communications Workers, etc., 5 N.J. 354, 378 (1950); 2 Davis, Administrative Law, supra, at 528. Similarly, the local authority entrusted with the power of taxi regulation must determine the facts at issue.
* * * On judicial review the court will not substitute its independent judgment for that of the board but will confine its inquiry to the ascertainment of whether the evidence before the board furnished a reasonable basis for its action. In re Greenville Bus. Co., 17 N.J. 131, 137-138 (1954) [citations omitted]
Where the record presented to the reviewing court is inadequate and the administrative agency has acted under misapprehension regarding its function, the proper course is to remand the matter for rehearing and determination. Kotlarich v. Ramsey, 51 N.J. Super. 520, 543 (App. Div. 1958).
In order to expedite the ultimate conclusion of the appeal, we are remanding the record to the governing body so that it may supplement the record by its own calculation of income, operating and other expenses, allowance for depreciation, experience in neighboring communities, value of tangible and intangible properties, and other facts leading to a proper rate base and reasonable rate of return to the licensee. The applicant shall have the opportunity to be heard and the council will make its fact findings and conclusions within 30 days of the order of remand I will issue.
Plaintiff will have seven days after receipt of notice of the council's decision to file a brief with the court if it seeks review of the municipality's determination. Defendants will have seven days after service of a copy of plaintiff's brief to file an answering brief. The appeal will be thereafter set down for further argument and all issues properly raised will be considered.