185 N.J. Super. 211 (1982)
447 A.2d 1359
PARK TOWER APTS. INC., A NEW JERSEY CORPORATION, PLAINTIFF,
v.
CITY OF BAYONNE, A BODY POLITIC, AND RENT CONTROL BOARD OF THE CITY OF BAYONNE, DEFENDANTS, AND PARK TOWER APTS. TENANT'S ASSOCIATION, DEFENDANT/INTERVENOR.
Superior Court of New Jersey, Law Division Hudson County.
Decided May 7, 1982.
*214 Harvey M. Douglen for plaintiff (Stier & Douglen, attorneys).
Robert Jones for defendants City of Bayonne and Rent Control Board of the City of Bayonne.
*215 John J. Hughes for defendant/intervenor Park Tower Apts. Tenant's Association (Dugan, Hughes, Finnerty & Krause, attorneys).
BILDER, J.S.C.
This is an appeal by a landlord from so much of an order of a rent control board as limits a rent increase to 40% and from a separate rent abatement order. Plaintiff contends the failure to grant a greater rent increase has unconstitutionally denied it a fair return; that the board's actions both in the imposition of a 40% rent increase limitation and the rent abatement are not authorized by the rent control ordinance; that the board's actions are unsupported by the evidence and, thus, arbitrary and capricious; and, finally, that the failure to provide a prompt administrative remedy has rendered the ordinance unconstitutional in its operation as to plaintiff.
Plaintiff is the owner of a 46-unit residential apartment house in Bayonne. On June 12, 1980 plaintiff filed an application for a fair net operating income (FNOI) increase with the Bayonne Rent Leveling Board (board). The filing of this application was apparently the denouement of a jurisdictional controversy which had been going on between plaintiff and the board for over two years. Apparently, the mortgage on plaintiff's property was insured by the U.S. Department of Housing and Urban Development (HUD) and, therefore, the control of rents by Bayonne was subject to preemption.[1] In April 1978 HUD preempted the board and granted a rent increase. Thereafter, there followed a good deal of argument as to whether HUD preemption required some sort of board approval in concert with the HUD order and as to the effect of preemption on future jurisdiction of the board. This led to litigation in the Chancery Division which lasted from the summer of 1978 until at least the fall of 1979, when an order was entered for the prompt filing of an application *216 by plaintiff and expeditious action by the board  all of this to be completed by the end of January 1980. The application was not filed as ordered.[2] Each side lays the blame for the delay on the other. Plaintiff contends it lacked the funds to compile and present required information and that a board requirement that information cover a fiscal period ending one month prior to the application was impossible of achievement. The board simply contends that no application was filed and suggests this is attributable to attempts by plaintiff to obtain additional HUD preemption relief. In any event, as noted, in June 1980 an application for a rent increase was filed which apparently initially was not acted upon because of a failure to comply with a requirement on the FNOI application form that the operating statement be for a 12-month period ending one month before filing. In October 1980 the board agreed to use plaintiff's last fiscal year (December 1, 1978 to November 30, 1979) and, at last, on November 5, 1980 a hearing was held on the rent increase. At that meeting the board required additional information from the landlord and, rather than adjourning the matter, voted to "table" the application, thus leading to an appeal to the city council which resulted in another two months' delay during which the appeal was heard and the matter remanded to the board because no appealable final determination had been made. On January 22, 1981 a further hearing was held by the board, at which time final action was taken on plaintiff's application granting a 40% rent increase over the April 1, 1978 rents. It is the board's contention[3] that this *217 increase, i.e., 40%, is the maximum permitted under the ordinance. Indeed, at the January 22, 1981 hearing the chairman not only noted this limitation but also the fact that even with this increase "the building is still showing a deficit." At the same hearing, the board, seemingly on its own motion, considered an apparent invalid increase in rents made in 1978 and ordered plaintiff to rebate to each tenant one month's rent for failure to comply with the requirements that all rent increases must receive prior approval of the board.

I. The Rent Increase

The Ordinance
The Bayonne rent control ordinance provides two alternative methods whereby a landlord may obtain a rent increase. The first is an increase tied to the consumer price index (CPI) but not to exceed 5.5%. The second is an increase based on an FNOI formula which permits the landlord to achieve a net operating income equal to 40% of his gross annual income.
The applicable provisions read as follows:
23-6.2 Lease Expiration or Annual Rent Increases. At the expiration of a lease or at the termination of the lease term of a periodic tenant, the landlord may apply to the board for an increase in rent based on the "consumer price index" (CPI) formula or a "fair net operating income" formula if the landlord believes he is not receiving a fair return on his investment. The landlord shall specify which formula is to be used.
23-6.2.1 CPI Formula. A landlord may apply for a percentage increase in rent not to exceed 5.5 percent of the monthly rent, or the percentage difference between the consumer price index 60 days prior to the expiration or termination of the lease and the consumer price index at the date the lease was entered into with the tenant, whichever of the two is lower. For a periodic tenant whose lease term shall be less than one year, that tenant shall not suffer or be caused to pay any rent increase in any 12-month period which exceeds the percentage stated herein.
23-6.2.2 Fair Net Operating Income [FNOI] Formula. In the event a landlord elects to apply for a rent increase based on an FNOI formula, along with an affidavit attesting to the detailed information required, the landlord shall supply proof of the operating expenses required by the board in the form of receipts or vouchers. Any operating expense claimed by the landlord but for which proof is not available may be denied by the board. In the event the information submitted by landlord indicates that the landlord is not receiving a net operating income of at least 40 percent of the gross annual income, the board may approve *218 a rent increase which enables the landlord to achieve a net operating income equivalent to 40 percent of the gross annual income. Such increase shall be equally apportioned among each housing space of the dwelling eligible for a rent increase as set forth herein.
Any operating expenses submitted by the landlord shall be received by the board to determine if such operating expenses are to be classified as capital improvements as defined in Section 23-1. All capital improvement increases shall be allocated in accordance with subsection 23-6.3.
23-1 Definitions.
e. "Fair net operating income" shall mean the gross annual income derived from the dwelling, less the operating expenses incurred by the landlord during each calendar year from the date of the last valid increase approved by the board.
g. "Operating expenses" shall mean annual expenses incurred by the landlord of the dwelling for the following items: heating fuel; utilities; real estate taxes; insurance; payroll; janitorial materials; painting and decorating; repairs and replacements; and miscellaneous administrative and operating expenses (itemized). Operating expenses for purposes of this chapter shall not include depreciation or mortgage interest and amortization. Capital improvement surcharges duly authorized by the board shall either be included in gross annual income and included as an operating expense or be totally disregarded so that they are excluded from gross annual income and excluded from operating expenses. All items of expense and the amount of gross annual income shall be presented in affidavit form by the owner. In dwellings involving 50 or more housing spaces, the statement of expenses and of annual income shall be certified by the certified public accountant.
All statement of expenses submitted to the board shall be judged by the board as to the reasonableness of such items and the amount stated for each item.
h. "Price index" shall mean the "consumer price index" (all items) for the region of the United States of which Bayonne, New Jersey, is a part, published periodically by the Bureau of Labor Statistics, United States Department of Labor.
23-8 Procedure.
All applications for rent increases (including capital improvement increases), rent reduction, re-establishment of base rents for new and substantially rehabilitated housing, and decontrol of housing spaces shall be made by completing the forms provided by the board secretary and supplying proof of notice and other information required in accordance with such rules and regulations promulgated by the board within the time periods set forth in this chapter. Upon receipt of all information, the concerned parties shall be notified of the date, time and place at which the board shall act on such application.
To these provisions must be added the constitutional imperative that the landlord obtain a fair return. "Every rent control ordinance must be deemed to intend, and will be so read, to permit property owners to apply to the local administrative *219 agency for relief on the ground that the regulation entitles the owner to a just and reasonable rate of return." Hutton Pk. Gardens v. West Orange, 68 N.J. 543, 572 (1975).

Fair Return
As Justice Pashman noted in Troy Hills v. Parsippany-Troy Hills Tp., 68 N.J. 604, 621 (1975), no particular formula need be followed to meet the fair return requirement. At least three different approaches have been used to determine the existence of a fair return: return on fair value, return on investment and the ratio of operating profits to gross income. See Helmsley v. Fort Lee, 78 N.J. 200, 210-211 (1978). Bayonne adopts the third approach, which it refers to as the FNOI formula. Bayonne Ordinance § 23-6.2.2. See discussion Helmsley, supra, at 212, n. 5, 216-223. That this is Bayonne's test of the existence of the minimum constitutional just and reasonable return is made clear by the provision that the FNOI formula may be used "if the landlord believes he is not receiving a fair return on his investment." Bayonne Ordinance § 23-6.2. Apart from this, there is no other provision in the ordinance for a fair return. "Fair return" or "fair rate of return" are neither defined nor otherwise provided for.[4] Apart from the FNOI application, there is no provision for hardship relief.
The board contends that the word "may" appearing in § 23-6.2.2 renders the 40% income level provided therein permissive; that the language, "the board may approve a rent increase which enables the landlord to achieve a net operating income equivalent to 40 percent of gross annual income," grants the board discretion to determine any FNOI as long as it does not exceed 40%. Such an interpretation cannot stand. If 40% is not the fair net operating income, the minimum constitutional *220 just and reasonable return  if this section is not the provision for ensuring a landlord a fair rate of return, the ordinance would be constitutionally defective. And fatally so. It would violate the 14th Amendment both for failure to ensure a just return and for lack of standards by which to measure that just return. Troy Hills, supra, 68 N.J. at 620, 621; see Helmsley, supra, 78 N.J. at 223, 231. While, as noted, a provision ensuring a fair return is engrafted into every rent control ordinance as a matter of constitutional law, without standards by which it can be applied it is barren.
A legislative enactment bears the presumption of constitutionality; given a choice, a court will not adopt a construction which will invalidate the law. Clifton v. Passaic Cty. Bd. of Tax., 28 N.J. 411, 422 (1958). Writing in the Law Division, Judge (now Justice) Pashman made an oft-cited and approved statement: "The cardinal principle of statutory construction must be to save and not to destroy. The duty of the court is to strain if necessary to save the act, not to nullify it." N.J. Sports & Expo. Auth. v. McCrane, 119 N.J. Super. 457, 476 (Law Div. 1971), aff'd 61 N.J. 1 (1972), app. dism. 409 U.S. 943, 93 S.Ct. 270, 34 L.Ed.2d 215 (1972).
Thus, I conclude that § 23-6.2.2 requires the board to grant FNOI applicants a rent increase which yields a net operating income of 40% of the gross annual income upon a showing by a landlord that the ratio is less than that. It being undisputed that plaintiff is not receiving such a net operating income, it shall be entitled to receive a rent increase sufficient to raise its net operating income (as defined by the ordinance) to an amount equal to 40% of the gross annual income.

The 40% Limit on Increase of Rentals
As noted, the board contends that the ordinance contains a 40% ceiling on rent increases  that, irrespective of the FNOI formula, the board is powerless to grant a rent increase in excess of 40%. The board concedes that the only reference to *221 40% appears in § 23-6.2.2. Thus, the ceiling arises from that provision or not at all.
Ordinances, like statutes, should be accorded their plain meaning. See Service Armament Co. v. Hyland, 70 N.J. 550, 556 (1976). The duty of the court is to construe and apply the ordinance as enacted  not to presume an intention other than that expressed in the legislative language. See In re Jamesburg High School Closing, 83 N.J. 540, 548 (1980).
A reading of § 23-6.2.2 makes clear that it contains no such ceiling provision. The 40% in that section relates to the relationship between expense and gross receipts, not to the ratio between old and new rents. A reading of the entire ordinance shows the propriety of the board's concession that no other 40% references appear.
Although the Bayonne ordinance contains no rent increase ceiling, it should be noted that if an arbitrary ceiling such as is urged here did exist, it would be overridden by the constitutional imperative.[5] If a conflict exists between limitations on rental increase provided in the fair return relief mechanism and the constitutional requirement of a fair rate of return, the latter is supreme. To put it another way, if the maximum increase permitted by a rent control ordinance is insufficient to provide an efficient operator with a just and reasonable rate of return, the return requirement is supreme and the ceiling provision becomes inoperative. See Helmsley, supra, 78 N.J. at 210; Hutton Park, supra, 68 N.J. at 568.

*222 The Need for Remand

In reviewing the action of the rent control board the court is limited to an examination of the record below. Kempner v. Edison Tp., 54 N.J. Super. 408, 417 (App.Div. 1959); see Green Acres of Verona, Inc. v. Verona, 146 N.J. Super. 468, 470 (App.Div. 1977). In this re-examination the court ought not to substitute its discretion for that of the local board, nor does it have the power to do so. Kramer v. Sea Girt Bd. of Adj., 45 N.J. 268, 296 (1965); Ward v. Scott, 16 N.J. 16, 23 (1954). Apart from judicial restraint, the action of the rent control board is presumptively valid and the burden is on the parties to show otherwise. Brandt v. Mt. Holly Tp. Bd. of Adj., 16 N.J. Super. 113, 117 (App.Div. 1951). This can only be done by showing that the action taken by the board was arbitrary, capricious and unreasonable. Kramer v. Sea Girt Bd. of Adj., supra, 45 N.J. at 296; Ward v. Scott, supra, 16 N.J. at 21.
While the actions of the rent control board are presumed to be correct and will withstand judicial interference in the absence of a showing that they are arbitrary, capricious and unreasonable, see In re Millburn Tp., 110 N.J. Super. 330, 335 (App.Div. 1970), the determination must be capable of standing judicial review. Application of Howard Savings Inst. of Newark, 32 N.J. 29, 52 (1960). It is not sufficient for the board merely to set forth its conclusions; it must articulate the basis for arriving at those ultimate conclusions and make the factual findings upon which that conclusion relies. Ibid.
Where the record below is insufficient to permit proper review, the appropriate action is to remand for a proper hearing. Kotlarich v. Ramsey, 51 N.J. Super. 520, 543 (App.Div. 1958); Yellow Cab Corp. v. Passaic, 124 N.J. Super. 570, 583 (Law Div. 1973). While no particular procedure is required of the rent control board, it must comport with due process. Yellow Cab Corp., at 581.
*223 In this case there is a complete dearth of findings or conclusions. Apart from the ultimate result, the board has been totally silent. Thus, because of the record the matter must be remanded.
This decision to remand is taken with the greatest reluctance because of the long delay that has already been engendered in the landlord's quest for a fair return  for relief from a situation in which the chairman of the rent leveling board has concluded that even after the granted increase, plaintiff's operating costs exceed its income. Administrative delay can render a rent control scheme defective in its application. The amount of delay which constitutional rights can tolerate is fully discussed in Helmsley, supra, 78 N.J. at 223-230. In the instant case I find the delay has been engendered as much by the landlord as by the board  but prospectively the pace must be swift.
I have held that the landlord is entitled to a fair net operating income equal to 40% of the gross operating income and this shall be allowed in full.
I am sensitive to the fact that local boards are usually composed of laymen untutored in the law or the niceties of procedure  serving long hours without compensation as a matter of public service. To aid in the rapid final resolution of this matter, some general guidance is appropriate.
It appears the board is relying on its own accountant to furnish it with guidance with respect to the requested increase. While the use of such an expert is perfectly proper, he must be used in a manner which accords with due process. Using the report of the accountant as a basis for determination was error. Although no special form is required for an administrative hearing and the rules of evidence are not applicable, there must be some sense of due process  of fundamental fairness. See Yellow Cab, supra, 124 N.J. Super. at 570, 581. The parties are entitled to have the conclusions reached on evidence presented in a form which they can meet and rebut. Decisions cannot be reached without a basis. The parties have a *224 right to know how and why the board reached its result  not only for purposes of appeal (see Application of Howard Savings Inst. of Newark, supra, 32 N.J. at 52) but because our system requires it; without such a rationalization, we are a government of men rather than a government of law. Here the board apparently adopted conclusions of its accountant which were not explained or supported by any sort of basis. The use of the accountant's report in such a blanket fashion amounts to an abdication of the board's function  a delegation of its job to an accountant. Instead of making its own examination of the evidence, weighing it, deliberating on it, the board "in large part" seemed to base its conclusion on the accountant's report.
The landlord has claimed a management fee expense of 6%. Such fees are proper and, if reasonable, their disallowance would be error. See Mead v. Fort Lee, 170 N.J. Super. 167, 171 (App.Div. 1979). Reasonable legal fees, if actually paid, must similarly be allowed as a proper part of administrative and miscellaneous expenses.
The board shall make specific findings of fact and conclusions of law with respect to the operating expenses, gross annual income, calculation of FNOI and increase in rent, and deliver such findings to this court not later than May 19, 1982. The board may hold such additional hearings prior thereto as it deems necessary to fulfill the mandate of this court, provided the deadline is not thereby violated. Such hearings shall not include the repetition of evidence or testimony already received and shall be strictly limited to the ascertainment of the financial data required for the determinations the board is being ordered to make.

II. The Rebate
As already noted, at the time the board granted the landlord a 40% rent increase, it also ordered a rebate to each tenant of one month's rent based on an alleged invalid rent increase imposed *225 by the landlord. Section 23-5 of the ordinance provides for such refunds:
23-5 Invalid Rent Increases.
23-5.1 Prior Increase. Any rental increase at a time other than at the expiration of a lease or termination of a periodic lease shall be void. Any rental increase in excess of that authorized by the provision of this chapter shall be void.
Any rent increase imposed after January 11, 1973, to the extent that such increase is in excess of that which is permitted by this chapter is hereby declared to be null and void and such excess rent shall be refunded to the tenant by the landlord forthwith.
23-5.2 Requirements of Increase. Landlords shall not collect any increase in rent prior to application for such increase and approval of same by the board. Any rental increase in excess of that authorized by the provisions of this chapter shall be void and such excess rent shall be refunded to the tenant by the landlord forthwith.
23-5.3 Filing a Complaint for an Invalid Rent Increase.

Any tenant claiming that an invalid increase in rent has been imposed must file a complaint regarding same with the board within 120 days of the imposition of any alleged invalid rent increase. A hearing shall then be conducted by the board to determine the validity of such increase.
Plaintiff does not contest the power of the board to order a rent rebate. It contests only the manner in which this power was exercised. The right of the board, under appropriate circumstances, to consider and adjudicate rent rebates is undoubted. However, it must exercise this right in strict conformity with the ordinance. The ordinance requires a tenant complaint within 120 days of the invalid rent increase, and a hearing thereafter held, § 23-5.3. Due process requires the landlord receive notice and an opportunity to be heard. The board may not ignore the requirements of the ordinance nor act except in conformity with its mandates. See Doric Realty v. Union City Rent Leveling Bd., 182 N.J. Super. 486, 490 (Law Div. 1981). It cannot be doubted that the board's actions were motivated by notions of fairness and equity. However, the board's power arises from the rent control ordinance, and its terms must be complied with. This is what makes a government of law. The order granting rebates is set aside.
NOTES
[1] See Hill Manor Apartments v. Stokes, 154 N.J. Super. 496 (App.Div. 1977).
[2] Although the order threatened sanctions, no enforcement was undertaken and the case was closed by a consent order dated February 25, 1980 which provided that the base rent as of April 1, 1978 is the HUD preemption rent and that plaintiff should apply for and be granted a prompt hearing, and that Bayonne reserves all rights and remedies under the present or prior ordinances.
[3] The intervening defendant-tenants have joined in the board's brief and arguments. Therefore, for brevity, since their contentions are those of the board's, they will not be otherwise referred to.
[4] In ordinances employing a "return" approach, the meaning of value, rate of return and computation of the rate of return are ordinarily (and necessarily) provided for.
[5] The requirement of a 40% ratio without an accompanying ceiling on return may in some cases appear to yield the landlord a high return on investment. An arbitrary ceiling on the percentage increase would, as noted, be defective. A ceiling on the rate of return with appropriate definitions and criteria might well stand. This is a matter of legislative will. A rent control ordinance cannot be attacked as granting landlords too high a rent. Branch Brook Gardens, etc. v. Belleville Rent Lev. Bd., 177 N.J. Super. 1 (App.Div. 1980).