213 N.J. Super. 357 (1986)
517 A.2d 475
GERALDINE J. GLYNN, PLAINTIFF-RESPONDENT,
v.
PARK TOWER APARTMENTS, INC. AND BERTRUM SINGER, DEFENDANTS-APPELLANTS.
JAMES MERRIMAN AND ELLEN MERRIMAN, PLAINTIFFS-RESPONDENTS,
v.
PARK TOWER APARTMENTS, INC. AND BERTRUM SINGER, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Submitted September 23, 1986.
Decided October 22, 1986.
*358 Before Judges MICHELS, SKILLMAN and LANDAU.
Masucci & Commisa, attorneys for appellants (Vincent D. Commisa, on the brief).
Dugan, Hughes, Finnerty & Krause, attorneys for respondent (John J. Hughes, on the brief).
The opinion of the court was delivered by SKILLMAN, J.A.D.
This appeal requires us to decide whether tenants may disregard the administrative remedy provided by a municipal rent control ordinance for challenging an invalid rent increase and instead seek recovery of excess rents through judicial proceedings.
The litigation in which the issue arises is the most recent round in a prolonged controversy over rents between Park Tower Apartments, Inc. (Park Tower) and its tenants, some of which is recounted in Park Tower Ap'ts, Inc. v. Bayonne, 185 N.J. Super. 211 (Law Div. 1982). The mortgage on Park Tower is insured by the United States Department of Housing and Urban Development (HUD). Therefore, the control of rents by the Bayonne rent control board is subject to preemption by HUD. See Hill Manor Ap'ts v. Stokes, 154 N.J. Super. 496 (App.Div. 1977), certif. den. 77 N.J. 486 (1978). This power was exercised by HUD in March 1978 to allow rent increases at Park Tower, effective May 1, 1978.[1] HUD granted approval in June 1978 for an additional rent increase, effective August 1, 1978. A dispute then arose concerning the effect of HUD's action, which resulted in litigation in the Chancery Division. See Park Tower Ap'ts, Inc. v. Bayonne, supra, 185 N.J. Super. at 215. This litigation was concluded, apparently in the fall of *359 1979, by entry of an order requiring Park Tower to file an application for a rent increase with the Bayonne rent control board. Id. at 215-216. In January 1981 the board granted Park Tower a 40% increase over the May 1, 1978 rents. Id. The board recognized that even with the 40% increase, "the building is still showing a deficit" (id. at 217), but it concluded that 40% was the maximum increase permitted by the Bayonne rent control ordinance.
The rent control board became aware during the hearing on the rent increase application, if not earlier, that the tenants at Park Tower had been paying rents at the level approved by HUD, effective August 1, 1978, rather than at the lower level approved by HUD, effective May 1978. It also became evident by the time of the hearing, although it had been a subject of dispute in 1978, that HUD's two approvals of rent increases during 1978 had different legal consequences: the approval effective May 1, 1978 was an exercise of HUD's power to preempt local rent control and hence was operative without the approval of the rent control board, but the approval effective August 1, 1978 was not preemptive and hence Park Tower was required to also secure the approval of the board before putting the second increase into effect. However, Park Tower withdrew its application to the board for an increase effective August 1, 1978 and when an increase was granted in January 1981, it was only effective as of February 1981. While no written complaint was ever filed with the board alleging that the August 1, 1978 increase was invalid because the board had not approved it, the board determined to respond to oral complaints received from some tenants and to award the tenants relief. Id. at 216. But the board was also apparently concerned about the financial condition of Park Tower. Therefore, instead of directing Park Tower to return to its tenants all the excess rent collected from August 1, 1978 to January 31, 1981, the board limited the rent rebate to one month's rent. Id. at 217.
*360 Park Tower filed an action in lieu of prerogative writ challenging the board's orders limiting it to a 40% rent increase and directing it to rebate one month's rent to all tenants. Id. at 215. The Park Tower Apartments Tenant's Association, in which the plaintiffs in the present case are members, intervened as defendants in the prerogative writ action. Id. at 216, n. 3. The intervening defendant-tenants did not file any cross-claim against the rent control board asserting that the amount of the rent rebate was insufficient.
The prerogative writ action was heard by Judge Bilder, who decided in favor of Park Tower in a reported opinion. Park Tower Ap'ts, Inc. v. Bayonne, supra. He concluded that the Bayonne rent control ordinance did not impose a 40% limit on any rent increase. Consequently, he remanded the matter to the board to determine the full rent allowed by the ordinance without imposing any ceiling on the increase. Judge Bilder also concluded that the rebate of one month's rent was inconsistent with the ordinance pursuant to which it purportedly had been ordered:
The right of the board, under appropriate circumstances, to consider and adjudicate rent rebates is undoubted. However, it must exercise this right in strict conformity with the ordinance. The ordinance requires a tenant complaint within 120 days of the invalid rent increase, and a hearing thereafter held, § 23-5.3. Due process requires the landlord receive notice and an opportunity to be heard. The board may not ignore the requirements of the ordinance nor act except in conformity with its mandates. [Citation omitted]. It cannot be doubted that the board's actions were motivated by notions of fairness and equity. However, the board's power arises from the rent control ordinance, and its terms must be complied with. This is what makes a government of law. The order granting rebates is set aside. [Id. at 225].
No appeal was taken from this decision.
On March 30, 1984, nearly two years after the prerogative writ action had been concluded, the two actions now on appeal were filed in the Special Civil Part. Both complaints alleged that Park Tower had illegally increased plaintiffs' rents in 1978. The two complaints were heard together. The cases were decided after trial by a letter opinion which stated that judgments would be entered in favor of plaintiff Glynn in the *361 amount of $1,425.50 and in favor of plaintiffs Merriman in the amount of $1,800.00.
On appeal Park Tower argues that the trial court lacked jurisdiction because the rent control board has exclusive jurisdiction under the Bayonne rent control ordinance to grant rent rebates to tenants. In the alternative, Park Tower argues that plaintiffs' suits are barred under principles of res judicata by the decision in Park Tower Ap'ts, Inc. v. Bayonne, supra. We conclude that the trial court lacked jurisdiction. Therefore, we find it unnecessary to address Park Tower's res judicata argument or plaintiffs' argument that this defense was waived because not raised in Park Tower's answer.
Plaintiffs rely upon section 23-5.2 of the Bayonne rent control ordinance which provides:

Requirements of Increase. Landlords shall not collect any increase in rent prior to application for such increase and approval of same by the board. Any rental increase in excess of that authorized by the provisions of this chapter shall be void and such excess rent shall be refunded to the tenant by the landlord forthwith.
However, the next section of this same ordinance, section 23-5.3, mandates the specific procedure to be followed by a tenant who claims that an invalid rent increase has been imposed:

Filing a Complaint for an Invalid Rent Increase. Any tenant claiming that an invalid increase in rent has been imposed must file a complaint regarding same with the board within 120 days of the imposition of any alleged invalid rent increase. A hearing shall then be conducted by the board to determine the validity of such increase.
The issue presented by this appeal is whether the remedy provided by section 23-5.3 of the Bayonne rent control ordinance is exclusive or whether a tenant has the option of seeking a rent rebate through judicial proceedings.
The exclusivity of an administrative remedy for vindication of a right created by legislative enactment is a question of legislative intent. Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n., 453 U.S. 1, 13-15, 101 S.Ct. 2615, 2622-2623, 69 L.Ed.2d 435 (1981); City of Hackensack v. Winner, 82 N.J. 1, *362 21-27 (1980); Lally v. Copygraphics, 173 N.J. Super. 162, 179 (App.Div. 1980), aff'd. 85 N.J. 668 (1981); Jalowiecki v. Leuc, 182 N.J. Super. 22 (App.Div. 1981). In seeking to ascertain such intent, a court should be mindful of the "elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." Transamerica Mortgage Advisors v. Lewis, 444 U.S. 11, 19, 100 S.Ct. 242, 246, 62 L.Ed.2d 146 (1979); accord Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n, supra, 453 U.S. at 14-15, 101 S.Ct. at 2623. This principle, like other principles of statutory construction, is fully applicable to the construction of municipal ordinances. See AMN, Inc. v. South Brunswick Tp. Rent Leveling Bd., 93 N.J. 518, 524-525 (1983).
We are satisfied that the remedy authorized by section 23-5.3 of the Bayonne rent control ordinance is the exclusive avenue by which a tenant may seek a rent rebate. This is not a case where the ordinance is silent as to the remedies to be pursued by an aggrieved party or where the remedies provided by the ordinance are permissive and thus might be construed to permit the pursuit of other remedies. Rather, the ordinance mandates that any claim of an invalid rent increase must be filed with the rent control board and that it must be filed within 120 days. It is difficult to conceive of language more clearly mandatory in its terms than that found in section 23-5.3.
We can also discern legitimate policy reasons for requiring allegations of unlawful rent increases to be filed with a rent control board and to be filed promptly. Although a court would be limited to awarding relief to an individual plaintiff-tenant, a rent control board can conduct an investigation on the basis of an individual tenant's complaint which may result in relief to other tenants as well. Furthermore, for the purpose of its financial planning, a landlord has a need to be notified promptly of any challenge to a rent increase. A rent control board may also conclude that allegations of past overcharges of rent *363 should be considered in conjunction with an application for a rent increase. In this case, for example, the board concluded in 1981 that it should withhold granting a full rebate to the tenants of Park Tower for past rent overcharges because of the adverse financial impact which this would have had upon the landlord. In another case, the board might conclude that a landlord's past rent overcharges would weigh against the grant of a rent increase. In other words, the adjudication of an alleged invalid rent increase cannot be divorced from the other regulatory responsibilities of a rent control board. Thus, the governing body of Bayonne might reasonably have concluded that the public interest would be best served by placing total responsibility for the administration and enforcement of rent control, including consideration of rent rebates, upon the rent control board. Cf. Daaleman v. Elizabethtown Gas Co., 77 N.J. 267, 271 (1978) (public utility charges are not subject to challenge in the courts under the Consumer Fraud Act in light of the pervasive regulatory responsibility conferred upon Board of Public Utilities with respect to such charges).
It also should be noted that the issue here is not whether plaintiffs should have exhausted an available administrative remedy before seeking judicial relief. See Abbott v. Burke, 100 N.J. 269 (1985). Rather, the point is that the same ordinance which regulates the rents a landlord may charge also establishes an exclusive administrative remedy for any alleged violation of that regulation. Consequently, the courts lack jurisdiction to entertain a claim under the rent control ordinance.
Finally, while we recognize that a case over which an agency has jurisdiction which has been filed with a court ordinarily should be transferred to the agency, R. 1:13-4(a), this is not a case in which transfer would be appropriate. The Bayonne rent control ordinance requires any complaint of an invalid rent increase to be filed within 120 days after it is imposed. However, the complaints in this case were not filed until nearly six years after imposition of the rent increases. Furthermore, *364 even if an argument could be made that the 120 day time period should have been tolled during the protracted and confusing course of litigation and proceedings before the rent control board subsequent to the August 1, 1978 rent increase, see Kaczmarek v. New Jersey Turnpike Auth., 77 N.J. 329 (1978), all litigation was concluded by the issuance of Judge Bilder's opinion in May 1982 and the proceeding on the remand to the rent control board ordered by that opinion were completed by July of 1982. Yet plaintiffs' complaints were not filed until nearly a year and a half later. Therefore, plaintiffs' complaints were plainly filed well beyond the 120 day period allowed by the ordinance. Consequently, no purpose would be served by transfer of these cases to the Bayonne rent control board.
For these reasons, we reverse the judgments in favor of plaintiffs and remand for the entry of orders dismissing the complaints.
NOTES
[1] Although the opinion in Park Tower indicates that the effective date of the HUD approved rent increase was April 1, 1978, 185 N.J. Super. at 215, 447 A.2d 1359, every witness at trial indicated that this date actually was May 1, 1978.