DIANE E. SIERCHIO, PLAINTIFF, v. 772 BROAD STREET, INC., DEFENDANT.

Superior Court of New Jersey
Law Division Special Civil Part
Small Claims Division Essex County

Decided November 6, 1987.

*Diane E. Sierchio,* plaintiff, pro se.

*Richard D. Forest,* for defendant.

FAST, J.S.C.

This is a formal opinion of a decision given from the bench. This opinion coordinates the concepts of *Berzito v. Gambino,* 63 *N.J.* 460 (1973) with *Glynn v. Park Tower Apartments, Inc.,* 213 *N.J.Super.* 357 (App.Div.1986). The issue is whether the court has jurisdiction to determine claims of overpayment of rent based on alleged defective conditions in an apartment where the tenancy is subject to certain rent-control ordinances. The combination of circumstances involved here requires a holding that this court is without jurisdiction in this action. I have found no other case reported in New Jersey on point. [In reading this opinion, it must be remembered that it does not concern a tenant's claim for a set-off where the rent has not been paid and the landlord is suing for summary possession—the usual "Marini" type case.]

This civil action is one of four filed by four tenants at a multi-family complex owned by defendant. These four tenants all claimed a breach of the covenant of habitability by virtue of a lack of air conditioning for virtually the entire summer of 1987, a period for which their rent had already been paid. The lack of air conditioning has been held to have been a matter of habitability, in the appropriate case. *Park Hill Terrace Assoc. v. Glennon,* 146 *N.J.Super.* 271, 277 (App.Div.1977). Since the rent had been paid for those months, *Berzito, supra,* would have required an affirmative action, initiated by the tenant (rather than as an offset in a suit for non-payment by the landlord. *C.F. Seabrook Co. v. Beck,* 174 *N.J.Super.* 577 (App.Div.1980)). The measure of damages in such an

action has been held to be the difference between the rent paid and the reasonable value of the tenancy without the air conditioning; *i.e.*, the tenant need have paid the reasonable, or fair rental, value only. *Id.* at 595–596.

In fact, these tenants did commence these actions as suggested by *Berzito*. However, their apartment is in Nutley, and Nutley has an ordinance creating a rent-leveling board. Therefore, the tenants also filed applications with that board, for the same redress, *i.e.*, for reimbursement for the difference between the amount paid and the value received. When the matter came before that board, it yielded the matters to the jurisdiction that it assumed that this court had. It was polite, but in error.

The Nutley ordinances provide as follows, as material to this decision:

**Sec. 180–8. Powers of Board.**

A. The rent Leveling Board shall have and exercise the powers necessary and appropriate to carry out and execute the purpose of this chapter, including but not limited to the following:

. . . .

(5) To assist in the settlement of problems or general complaints that arise out of the landlord and tenant relationship.

B. The Board shall give both landlord and tenants reasonable opportunity to be heard before making any determination.

**Sec. 180–9. Continuance of standards of service and maintenance.**

During the term of this chapter, the landlord shall continue the same standards of service and maintenance and shall provide the same ... equipment as he provided ... prior to the enactment of this chapter.

The ordinance is to remain in full force and effect until December 31, 1988. [It was originally adopted in July, 1973 and has been extended periodically, since then.]

The ordinance also included procedural and punitive provisions.

Those provisions bring this court to the same conclusion as *Glynn, supra,* relating to the Bayonne rent-control ordinance. That is:

We are satisfied that the remedy authorized by section 23–5.3 of the Bayonne rent control ordinance is the exclusive avenue by which a tenant may pursue a [problem or general complaint arising out of the relationship of landlord and tenant, or a claimed decrease in services] ... In other words, the adjudication of an alleged invalid rent increase cannot be divorced from *the other regulatory responsibilities* of a rent control board. Thus, the governing body of Bayonne might reasonably have concluded that the public interest would be best served by placing total responsibility for the administration and enforcement of rent control, *including consideration of rent rebates*, upon the rent control board. [*Glynn*, 213 *N.J.Super.* at 362–363; emphasis supplied]

The exclusivity of the Nutley ordinance is no less compelling, and the breadth of the board's responsibilities appears limitless as relating to the landlord-tenant relationship for those tenancies not exempted from the ordinance.

Two of the policy reasons stated in *Glynn* are present here, also, where four tenants share a common complaint. One policy reason stated was that:

Although a court would be limited to awarding relief to an individual plaintiff-tenant, a rent control board can conduct an investigation on the basis of an individual tenant's complaint which may result in relief to other tenants as well. [*Id.* at 362]

The other policy reason was that past rent overcharges could be considered by that board in determining rent rebates or future increases.

Consistent with the first reason (*i.e.*, investigations by local officials), habitability complaints are most effectively handled at the most local level of adjudicatory authority. As it was said in *Dome Realty, Inc. v. Paterson,* 83 *N.J.* 212, 227 (1980): "Enforcement of local housing standards is a particularly apt matter for local determination." *Id.* at 227. That case also found that the potential diversity of housing problems from town to town "highlights the virtue of permitting local solutions to the varying public problems which confront municipalities." *Id.* at 226. Another reason is the access of local housing and licensing officials who are customarily called upon to testify in this type of proceeding. There should be less disruption to the work schedules of these public employees by appear-

ing in their own locales, and perhaps greater certainty with reference to when they will be needed to testify.

Likewise, the board should have the familiarity of any local housing or maintenance ordinance. Although violations of those ordinances are not *per se* evidence that a tenant is entitled to relief, they are instructive. *Doric Realty Co. v. Union City Rent Bd.*, 182 *N.J.Super.* 486 (Law Div.1981).

However, the *most significant policy reason* to adjudicate a habitability complaint at the local board level is the criterion for allowing the rebate. The criterion is the difference between the rent paid and the reasonable value of the apartment in the subject condition. *Seabrook, supra.* The rent-control [or "leveling"] board, as a *quasi*-judicial administrative agency, should be most able to determine the reasonable value of the units. The rules of evidence are not to be strictly applied to proceedings of this type of board. *Park Tower Apts., Inc. v. Bayonne,* 185 *N.J.Super.* 211, 223 (Law Div.1982); *Evid.R.* 2(2), Comment 3 (Anno.1987).

The problem of determining fair and reasonable rentals with a habitability complaint is compounded where the rents are not uniform; and especially, where they are not uniform in one apartment building or complex because of the controls imposed in a rent-control ordinance. This case is a prime example; the tenant has been in possession of this apartment for 14 years. Her rent is $489.91 per month; that is $130 less than one of the other three tenants who filed the subject complaints with this court and the petitions with the board. Clearly, the board should best be able to resolve this apparently thorny issue.

Although the following quote from *Doric, supra,* was *dictum,* it presaged the conlusion reached in this decision:

With a focus on the purpose of the rent reduction—*i.e.,* to prevent a backdoor increase in rent by a decrease in services—it becomes apparent that the diminution of services, care or maintenance must be substantial and significant. There must be a true relationship between the landlord's alleged failures and the value of the rental. The decrease cannot be founded on trivial complaints

or transitory failures. The Rent Control Board is not intended to be a forum for tenant gripes or personality conflict reprisals. Whether a defect is substantial or whether an interruption in services is transitory are questions of fact to be determined by the Board. [182 *N.J.Super.* at 492]

Again, while the issues were not foursquare the same, the result of the subject Nutley ordinance was touched on in *Orange Taxpayers Council, Inc. v. Orange,* 83 *N.J.* 246 (1980) where the Supreme Court said:

A municipality's authority to act "for the preservation of the public health, safety and welfare" of its residents, *N.J.S.A.* 40:48–2, permits it to go beyond mere regulation of price. [*Id.* at 257]

Ordinarily, this matter would be transferred to the Nutley rent-leveling board pursuant to *R.* 1:13–4. However, since the tenant has already filed an application with that board, this action is hereby dismissed for a lack of jurisdiction.