WALTER H. FREYGANG, PLAINTIFF-RESPONDENT, v. BOR-
OUGH OF VERONA, A MUNICIPAL CORPORATION;
COUNCIL OF THE BOROUGH OF VERONA; WALTER
D. McKINLEY, MAYOR OF THE BOROUGH OF VERONA,
DEFENDANT-APPELLANTS, AND VERONA TENANTS
ORGANIZATION, DEFENDANT.

Superior Court of New Jersey
Appellate Division

Submitted January 4, 1977—Decided January 21, 1977.

Before Judges MATTHEWS, SEIDMAN and HORN.

*Messrs. Bannon, Rawding & Bannon,* attorneys for appellants (*Mr. George T. Rawding,* of counsel; *Mr. Robert N. Millman* on the brief).

*Messrs. Lasser, Lasser, Sarokin* and *Hochman,* attorneys for respondent (*Mr. Barry L. Eisenberg* on the brief).

PER CURIAM. The Borough of Verona, defendant-appellant herein, adopted a rent control ordinance, No. 2–73, in February 1973. Under its provisions a rent leveling board was created. Owners of tenanted residential units not otherwise exempt under the terms of the ordinance were prohibited from increasing rents except in compliance with the requirements of the ordinance. Plaintiff Walter H. Freygang, owner of premises within said borough occupied by both residential and commercial tenants, increased the rents of certain tenants without complying with the provisions of the ordinance. The Verona Tenants Organization thereupon filed

a complaint with the rent leveling board, asserting that the subject premises were controlled under the ordinance and that Freygang improperly increased the rents. After a hearing the board decided that the increase was invalid. On appeal, under the ordinance, to the borough council, and again following a hearing, that body affirmed the decision of the board.

Plaintiff then filed an action in lieu of prerogative writs in the Superior Court, Law Division, seeking a review of the determination of the council. Following a trial *de novo* on a record made before the judge by agreement, he entered a judgment declaring that the subject premises were exempt from the provisions of Ordinance 2–73. The borough, being one of the defendants named in the in lieu action, is the sole appellant.[1]

The determination of the issue raised below as well as before us revolves around the interpretation of § 1(a) and (b) of the ordinance. The ordinance by its terms was operative only with respect to rents of housing space not otherwise exempt. Sections 1(a) and (b) provide:

(a) "Housing space" means and includes that portion of a dwelling rented or offered for rent for living and dwelling purposes to one individual or family unit *together with all privileges, services, furnishings, furniture, equipment, facilities and improvements connected with the use or occupancy of such portion of the property.*

(b) "Dwelling" means and includes any building or structure or trailer or land used as a trailer park, rented or offered for rent to one or more tenants or family units. Exempt from this ordinance are motels, hotels, and similar type buildings and buildings in which at least one-third of the occupied floor space is commercial, and housing units of two units or less. Housing units newly constructed and rented for the first time are exempted, and the initial rent may be determined by the landlord. All subsequent rents will be subject to the provisions of this ordinance.

---

[1]The subject ordinance has been superseded by a new one. Plaintiff concedes that the exemption in question has been omitted in the existing ordinance.

The trial judge, in reversing the decision of both the rent leveling board and borough council, contrary to their findings, held that the subject premises were occupied more than one-third for commercial purposes and consequently the owner was not restricted by the ordinance in increasing the level of rents. We disagree and accordingly reverse.

In reaching his conclusion the judge made the following findings, which were not disputed:

### Residentially Occupied Floor Space

1. Cactus room — 143 sq. ft.
2. Tenants' apartments — 9,983 sq. ft.
3. Basement apartment — 429 sq. ft.
4. Total occupied floor space being residentially used — 10,555 sq. ft.

### Commercially Occupied Floor Space

1. First floor commercially occupied floor space — 2,841 sq. ft.
2. Apartment used as office by plaintiff-landlord — 557 sq. ft.
3. Commercial basement storage area — 2,202 sq. ft.
4. Total occupied floor space being commercially used — 5,600 sq. ft.

The judge concluded that 34.6% of the occupied floor space was commercial. Appellant contends that the judge erred in reaching this conclusion by his failure to include as residentially-occupied floor space the hallways and staircases. The subject building is composed of 16 residential apartments, all located in the residential section of the building with the exception of the apartment used by plaintiff as an office. The other four commercial occupants all have street addresses and street entrances.

The residential tenants have keys to admit them into the entrance to the hallways and stairways leading to the residential apartments. Although the commercial tenants may have access to the roof where they maintain aerials by the use of the residential common areas, they do not have keys to said areas and their passage to the roof requires obtaining

admission from one who does have a key or the superintendent.

In arriving at the number of square feet to be considered respectively as residential and commercial, the judge excluded all space outside the respective residential units and commercial units. The hallways and stairways used exclusively by the tenants for ingress and egress to their apartments amounted to 1,212 square feet. If this area were considered as occupied residentially the respective areas would be as follows: residential, 11,767 square feet; commercial, 5,600 square feet. These figures produce, in round figures, percentages of 67.8% and 32.2%, respectively. Even adding the passageway area (either 145 or 245 square feet) to the commercial storage space (which the judge eliminated) to the commercially occupied area would not produce a figure equal to 33-1/3% for that used commercially.

■ We feel that the judge, in determining that passageways were not to be considered as "occupied," made a too narrow and restrictive interpretation of the ordinance. We consider that stairways and hallways come within the phrase especially noted in above-quoted § 1(a) of the ordinance.

■■ It is well settled that "[i]n the absence of an explicit indication of a special meaning, the words of a statute are to be given their ordinary and well understood meaning." *Safeway Trails, Inc. v. Furman,* 41 *N. J.* 467, 478 (1964), *cert.* den. 379 *U. S.* 14, 85 *S. Ct.* 144, 13 *L. Ed.* 2d 84 (1964). But the spirit of a statute or ordinance gives character and meaning to particular terms. *Fischer v. Fischer,* 13 *N. J.* 162 (1953). Primary regard must be given the fundamental purpose for which the legislation was enacted, and where literal reading will lead to a result not in accord with the essential purpose and design of the act, the spirit will control the letter. *N. J. Builders, etc., Ass'n v. Blair,* 60 *N. J.* 330 (1972).

The preamble of Ordinance 2–73 recites that:

* * * [A]n emergency exists * * * with respect to the rental of housing space in multiple dwellings not subject to rent regulation

by reason of the demands for increases in rent which are determined by said governing body to be exorbitant, speculative and unwarranted, and that such increases are causing severe hardships upon tenants and are adversely affecting the health, safety and general welfare of the citizens of the Borough of Verona *̂ * *̂.

This recital, reflecting the vital concern of the governing body to ameliorate the hardships of tenants in multiple dwellings, demonstrates a solicitude for the residential tenants primarily. Section 1(b) of the ordinance, as quoted, reflects this by exempting only buildings "in which at least one-third of the occupied floor space is commercial." This language particularly projects a concept of considering all floor space used by tenants in a building and determining if one-third or more is used commercially. Except for space used exclusively by the landlord for utilities, such as a boiler room or utility closet, all floor space should be considered. Although plaintiff's office was included by the trial judge as part of the premises used commercially, if it was used primarily for the subject building operation and business it should have been excluded.

From a commonsense viewpoint, as well as from that which the spirit and intention of the ordinance appears to depict, the hallways and stairways used by the residential tenants must be considered as a part of the residential occupancy. To construe the terms of the ordinance otherwise by excluding such space used exclusively by the residential tenants in common fails to accord sound reasoning to the interpretation of the ordinance.

The use of the common areas by tenants, especially where they are unquestionably necessary for their use and enjoyment of their specific apartments, is an effective occupation by them in the contemplation of the ordinance. As held in *Rayhertz, &c., Corp. v. Fulton, &c., Co.,* 124 *N. J. Eq.* 121, 123 (Ch. 1938), "as a general rule everything which belongs to the demised premises or is used with, and appurtenant to them and which is reasonably essential to their enjoyment passes as an incident to them, unless especially

reserved." See also, *Den Gre Plastics Co., Inc. v. Travelers Indem. Co.,* 107 *N. J. Super.* 535, 545 (Law Div. 1969). As stated in *Den Gre,* the word "occupy" is variously defined as meaning to possess, to have in possession or use, or to use, 67 *C. J. S., Occupy,* at 83. We therefore view the common space used by residential tenants as included in the area "occupied" by them.

We do not regard *Leone Managem't Corp. v. West N. Y. Bd. of Comm'rs,* 130 *N. J. Super.* 569 (Law Div. 1974), as supportive of plaintiff's contentions, as urged by him. The issue which we decide was not before the judge in that case. In any event, we regard the holding there as consistent with our own. The judge in that case recognized, as we have indicated, that the common areas are a necessary adjunct to the building for the full use and enjoyment by the tenants occupying the apartments. Moreover, the judge found as an infirmity in the rent control ordinance under review in that case a failure to consider a rent surcharge which would include the tenants' share of the overall rent increase which would include the common areas.

██ We recognize that the landlord is generally charged with the duty of maintaining the common areas in a reasonably safe condition, which of course implies that he may enter upon same for any reasonable purpose associated with his obligations and duties. *Taneian v. Meghrigian,* 15 *N. J.* 267, 277 (1954). But this fact does not collide with the concept of considering the common ways as residential under the subject ordinance. The same rights and duties of the landlord continue because the residential character of the common ways in no way conflicts with the common-law obligation of the landlord in these circumstances.

█ Since we conclude that the inclusion of the residential common areas must be considered, as already indicated, and that inclusion renders the premises subject to the provisions of Ordinance 2–73, it is not necessary to consider the second point raised by appellant — that the trial judge also erred in including the basement commercial storage

areas as commercially occupied. However, we are satisfied that the judge was warranted in including such storage areas, because there was sufficient credible evidence produced before him to permit that determination. *State v. Johnson,* 42 *N. J.* 146 (1964).

For the above reasons the judgment entered below is vacated. The matter is remanded to the trial judge for the purpose of entering a judgment declaring that the premises of plaintiff are subject to the provisions of said Ordinance 2–73.

No costs.