160 N.J. Super. 546 (1978)
390 A.2d 677
CENTRAL TOWERS COMPANY T/A NORTHBRIDGE PARK, A PARTNERSHIP; AND LE CROSS ASSOCIATES, A PARTNERSHIP, PLAINTIFFS,
v.
BOROUGH OF FORT LEE, RENT LEVELING BOARD OF THE BOROUGH OF FORT LEE, DEFENDANTS.
JOHN F. INGANAMORT, MICHAEL INGANAMORT AND LASALA CONTRACTING CO., INC., A JOINT VENTURE TRADING AS MEDITERRANEAN TOWERS, PLAINTIFFS,
v.
BOROUGH OF FORT LEE, RENT LEVELING BOARD OF THE BOROUGH OF FORT LEE, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided June 14, 1978.
*547 Mr. Joseph F. Behot, Jr. for plaintiffs Central Towers Company, t/a Northbridge Park; Le Cross Associates (Messrs. Greenstone & Sokol, attorneys).
Mr. Stephen R. Spector for plaintiffs John F. Inganamort, Michael Inganamort and LaSala Contracting Co., Inc. (Messrs. Glock and Spector, attorneys).
Mr. Marcel R. Plaut for defendants Borough of Fort Lee; Rent Leveling Board of the Borough of Fort Lee (Messrs. Murphy, Ellis and McBride, attorneys).
MALECH, J.S.C.
The issue in this case is whether "garage space" and "parking space," used by tenants occupying apartments in the same building-parking complex, are subject to rent control under the Fort Lee Rent Control Ordinance.
Plaintiff Central Towers Company, t/a Northbridge Park (hereinafter Central Towers), is a limited partnership under the laws of New Jersey and, as such, is the owner and operator of a high-rise apartment building with 280 apartments and a total of approximately 400 indoor and outdoor garage/parking spaces. Under normal circumstances the apartment lease and the garage/parking space license/rental, although under a separate lease and apart from the rental of a residential apartment, begin and terminate on the same date. *548 The apartment lease does not automatically carry with it a space for an automobile, but if requested by a tenant and if available, the garage/parking space will be made available to the apartment tenant.
Plaintiff Le Cross Associates is also a limited partnership organized under the laws of New Jersey, and operates a high-rise apartment under a 99-year lease with options and also a commercial business adjoining. Le Cross Associates maintain an indoor parking garage and rents parking space under separate lease agreements to individual tenants of both its residential and commercial buildings. As in Central Towers, the apartment lease and lease for the garage/parking space are concurrent.
Plaintiffs in the consolidated case are John F. Inganamort, Michael Inganamort and LaSala Contracting Company, Inc., a joint venture trading as Mediterranean Towers North and Mediterranean Towers South. Each building contains 483 dwelling units and is connected by a two-story garage containing approximately 450 indoor spaces. Surrounding the buildings there are also approximately 900 to 950 outdoor parking spaces, totalling approximately 1400 spaces, which are licensed for use by separate agreement to the tenants of either building. If the tenant requests one, and if there is space available, it is designated to the tenant when the lease is signed. The use of garage/parking spaces are granted by license rather than by lease.
The Fort Lee Rent Leveling Board charged Central Towers, LeCross Associates and Mediterranean Towers with violations of § 2 of Ordinance 74-32 (which pertains to the permissible percentage of increase in rent for any housing space) and for increasing garage rents above the level permitted by this rent leveling ordinance. The decisions of these cases have been reserved by the municipal court judge and have not yet been rendered. However, at all times during the effective date of Ordinance 74-32, and prior thereto, the policy of the Rent Leveling Board has been to include outdoor *549 or indoor garage parking space as within the purview of the rent leveling ordinance.
Plaintiffs in these consolidated cases are all owners and/or operators of high-rise apartment complexes in the Borough of Fort Lee who maintain that Rent Control Ordinance 74-32 of the Borough of Fort Lee does not apply to garage space and parking space. The question presented is whether the garage rents and license fees are included within the regulated rent increases. The court holds that they are under rent control when used by apartment tenants.
The case was submitted to the court on the basis of a set of facts orally stipulated in the record, and involves the interpretation of the language and the intent of Ordinance 74-32, entitled "An Ordinance to Regulate, Control and Stabilize Rents and Create a Rent Leveling Board within the Borough of Fort Lee." Neither the power of a municipality to pass a rent control ordinance nor the validity of the ordinance itself is here in question. The case before the court is the trial of an action in lieu of prerogative writs involving the applicability of the Fort Lee Rent Control Ordinance to garage/parking space areas, for which the landlords charge rent or a license fee to apartment tenants.
It is a well established legal principal that to determine the purpose and intent of a legislative body, the court will look to the legislative history of the enactment. If there is no legislative history, as is the case here, the court will then look to the preamble. The preamble to Ordinance 74-32 provides that the rent leveling ordinance was passed by the borough pursuant to its police powers to protect the health, safety and welfare of its citizens "with respect to the rental of housing space in dwellings by reason of the demands for increases in rent which are determined by said government body to be exorbitant, speculative and unwarranted * * * causing severe hardships upon tenants and * * * adversely effecting [their] health, safety and general welfare * * *."
Other pertinent parts of Ordinance 74-32 provide as follows:

*550 Sec. 1.
* * * * * * * *
(b) "Dwelling" means and includes any building or structure or trailer or land used as a trailer park, rented or offered for rent to one or more tenants or family units. Exempt from this ordinance are motels, hotels and structures containing less than three units of housing space in which one such unit is owner occupied. (c) "Housing Space" means and includes that portion of a dwelling, rented or offered for rent for living or dwelling purposes to one individual or family unit, together with all privileges, services, furnishings, furniture, equipment, facilities and improvements connected with the use or occupancy of such portion of the property.
* * * * * * * *
(g) "Rent" means the amount of consideration including any bonus, benefit or gratuity demanded or received by virtue of any agreement between the parties whereby upon the payment of a sum certain by the one party (hereinafter "tenant"), the other (hereinafter "landlord") allows him the peaceful and quiet enjoyment of the use and occupation of the unit of housing space for that time period. If the parties agree that rent is to be paid upon some interval other than one month, then that shall be construed as an alternative method of payment and the monthly rent shall be calculated by apportioning the rent so as to determine the sum due for the term of one month. Where the parties have covenanted to provide for increments during the term of their agreement, such increments shall not be averaged up as an alternative method of payment calculation.
* * * * * * * *
Sec. 22.
This ordinance, being necessary for the welfare of the Borough and its inhabitants, shall be liberally construed to effectuate the purposes thereof.
Plaintiffs argue that since the words "parking space," "garage space" or similar language do not appear in the borough's definition of "housing space," and since separate and distinct leases or licenses are required for the rental or licensing of garage/parking areas, Ordinance 74-32 should not be construed to apply to garage/parking space.
This argument, however, totally ignores a reality of contemporary suburban life. Automobiles are a necessity and not a luxury in the suburbs where mass transit facilities are not as readily available to residents as they are to city *551 dwellers. They are needed to get to work, go shopping and to carry out the many routine activities that daily living entails. With automobiles as such a necessary and integral part of suburban living, therefore, the mayor and town council of Fort Lee must have intended that garage/parking spaces be included when it enacted this ordinance, within the meaning of the words expressed, because not to do so would defeat the purpose of the ordinance. The exclusion of rental for a garage/parking space would serve as a mechanism to evade rent control legislation by allowing landlords to make up for money lost on apartment rents by arbitrarily increasing the rent on garage/parking spaces. Such a result would be tantamount to some erosion of rent control and contra the purpose and intent of the ordinance.
The object of a rent control ordinance is to prevent exorbitant and oppressive rental increases in a milieu where tenants have been deprived of freedom of contract by the absence of a competitive housing market. Albigese v. Jersey City, 127 N.J. Super. 101, 111 (Law Div. 1974), mod. on other grounds, 129 N.J. Super. 567 (App. Div. 1974); Marshall House, Inc. v. Brookline Rent Control Bd., 358 Mass. 686, 266 N.E.2d 876 (Sup. Jud. Ct. 1971); Birkenfeld v. Berkeley, 49 Cal. App.3d 464, 122 Cal. Rptr. 891 (D. Ct. App. 1975). See Friedman v. Podell, 21 N.J. 100 (1956); Brookchester, Inc. v. Ligham, 17 N.J. 460 (1955). With that purpose in mind and with essentially identical definitions of "housing space" and "dwelling" as in the Fort Lee ordinance challenged herein, the court in Freygang v. Verona, 146 N.J. Super. 310, 314 (App. Div. 1977), stated that primary regard must be given the fundamental purpose for which the legislation was enacted, and where literal reading will lead to a result not in accord with the essential purpose and design of the act, the spirit will control the letter.
In a case factually apposite to the instant matter the plaintiff contended that the rent control provisions of the legislation in question did not authorize control of the rental of *552 garage space. Veillette v. Bowles, 150 F.2d 862 (Em. App. 1945). The Emergency Price Control Act defined "housing accommodation" as "any building, structure, or part thereof, or land appurtenant thereto, or any other real or personal property rented or offered for rent for living or dwelling purposes * * * together with all privileges, services, furnishings, furniture, and facilities connected with the use or occupancy of such property." 50 U.S.C.A. Appendix § 942(bf). In reasoning that the statute's applicability was dependent upon the nature of the use to which garage space was placed, the court held that while mere storage of an automobile could not be considered within the statutory definition, the use of garage space by a tenant in connection with the use or occupancy of leased property would constitute a privilege or service covered by the statute. See Johnson v. Bowles, 145 F.2d 166 (Em. App. 1944).
Cases under the Emergency Price Control Act discussed in Veillette, supra, have held that garage accommodations were not subject to rent control regulations which affected the rental of housing accommodations. They are distinguishable, however, from the case at bar. In one case, for example, the lessor rented a garage to a lessee under a separate agreement two years after the renting of the apartment. Woods v. Golt, 85 F. Supp. 667 (D. Del. 1949). The garages were not connected with the lessor's rental property, were usually rented to persons other than the lessees, and the stipulated facts showed clearly that the landlord and tenant understood that the garage was not being rented in connection with the use or occupancy of the tenant's apartment. None of these facts are applicable here. Nor can it be stated here, as it was in Woods v. Forest Hills South, 78 F. Supp. 139 (E.D.N.Y. 1948), that garage rents were not covered by the maximum rent regulations because the lease expressly excluded garage service.
Here the garage/parking spaces of plaintiffs are within or contiguous to the housing accommodations, are usually *553 rented to tenants under agreements, which although separate, are concurrent with apartment rentals, and are not excluded from the apartment leases either in those leases or through a general understanding between the landlords and tenants. The intent of the governing body is clearly stated in § 22 of Ordinance 74-32: "This ordinance, being necessary for the welfare of the Borough and its inhabitants, shall be liberally construed to effectuate the purposes thereof." Plaintiff's position is contrary to that intent as any other interpretation of it would not be in accordance with the concerns and spirit expressed in the preamble. Freygang v. Verona, supra. In addition, it is clear that the governing body intended that the potential application of this ordinance be broad as is exemplified by the inclusion of the all-encompassing term "dwelling" in its sections of defined terms. Cf. Kew Gardens Hills Housing Ass'n (Garage Units) v. Office of Rent Control, 41 N.Y.2d 963, 394 N.Y.S.2d 877, 363 N.E.2d 583 (Ct. App. 1977).
Therefore, the only fair and reasonable construction of Ordinance 74-32 applicable here is one which includes garage/parking space within the perimeters of rent control. It is a privilege, service or facility connected with the use or occupancy of the demised property.
For the above reasons the court holds that the rent/license fee for garage/parking spaces furnished to apartment tenants is within the purview of rent control under Ordinance 74-32.
Judgment is entered in favor of defendants.